# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# Southern Division

| | | |
|---|---|---|
| **JAVONNA S. BARNES** | * | |
| Plaintiff | * | |
| v. | * | Civil No. PJM 18-1473 |
| **NCC BUSINESS SERVICES, INC.,** *et al*. | * | |
| Defendants | * | |

## **MEMORANDUM OPINION**

Plaintiff Javonna S. Barnes ("Barnes") filed this action on May 22, 2018 against Defendants NCC Business Services, Inc. ("NCC"), Sun Ridge Associates, LP d/b/a Autumn Woods Apartments ("Autumn Woods"), TransUnion, LLC ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax"). Barnes has filed a Motion to Strike Affirmative Defenses (ECF No. 36) from Autumn Woods's Answer (ECF No. 33) to Barnes's Complaint (ECF No. 2). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.**

This action arises out of a debt that Barnes allegedly owes to Autumn Woods, the apartment complex where she lived from approximately December, 2015 until December, 2016. ECF No. 2 at ¶ 21. According to the Complaint, during the month of August, 2016, Barnes noticed mold in her apartment. *Id.* at ¶ 22. She notified Autumn Woods management of the mold, but Autumn Woods did not remove it from her apartment. *Id.* at ¶ 23. In response, Barnes withheld her rent payment for the month of August, 2016. *Id.*

1

On August 25, 2016, Barnes filed a rent escrow action in the District Court for Prince George's County, Maryland. *Id.* at ¶ 24. That same day, the District Court ordered an inspection of Barnes's apartment that confirmed the mold found there to be toxic. *Id.* During the pendency of the District Court action, Barnes paid her rent in full into a court escrow account. *Id.* at ¶ 25. On December 2, 2016, the District Court ordered that the funds in the escrow account would be split between Barnes and Autumn Woods, and that Barnes did not owe any further debt to Autumn Woods. *Id.* at ¶ 26. On December 23, 2016, Barnes appealed the District Court's decision because she believed she was entitled to a greater share of the funds in the rent escrow account. *Id.* at ¶ 27. Meanwhile, on December 30, 2016, Barnes and her family moved out of Autumn Woods. *Id.* at ¶ 28.

On April 17, 2017, Barnes received an email alert that a delinquent debt had appeared on her credit report. *Id.* at ¶ 30. After checking her reports, Barnes learned that a debt collector, NCC, reported that she owed a debt of $1,661.00 to "Autumn Woods Apartments." *Id.* On May 22, 2017, Barnes sent letters to credit reporting agencies TransUnion, Equifax, and Experian requesting that they remove the debt listed on her credit report. *Id.* at ¶ 32. However, the debt to Autumn Woods reported by NCC remained on Barnes's credit report throughout the remainder of 2017. *Id.* at ¶¶ 32–39. On December 18, 2017, Barnes again sent letters to TransUnion, Equifax, and Experian requesting the removal of the debt to Autumn Woods from her credit report. *Id.* at ¶ 38.

On May 22, 2018, after receiving no response from TransUnion, Equifax, or Experian, Barnes filed the present action in the Circuit Court for Prince George's County, Maryland, against NCC, Autumn Woods, TransUnion, Equifax, and Experian, alleging a number of federal and state law claims. That same day, TransUnion removed the action to this Court. Equifax

filed its Answer on June 4, 2018. TransUnion filed its Answer on June 6, 2018. NCC filed its Answer on June 27, 2018. Experian filed its Answer on July 2, 2018. Autumn Woods filed its Answer on September 5, 2018. On September 25, 2018, Barnes filed the pending Motion to Strike Affirmative Defenses from Autumn Woods's Answer. She has not filed a Motion to Strike Affirmative Defenses from the Answer of any other Defendant.

**II.**

The Fourth Circuit disfavors motions to strike because "striking a portion of the pleading is a drastic remedy . . . often sought by the movant simply as a dilatory tactic." *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citation omitted). However, a motion is appropriate to strike "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action . . . ." *Id.*

While the Fourth Circuit has not examined whether it is acceptable to strike affirmative defenses for failing to satisfy the pleading standards established in Rule 8 of the Federal Rules of Civil Procedure, the prevailing view in the District of Maryland is that the heightened pleading standard prescribed by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662,[1] also applies to affirmative defenses. *See, e.g.*, *Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 461 (D. Md. 2014) ("The majority of district courts, including those within this circuit . . . have concluded that the *Twombly–Iqbal* approach applies to affirmative defenses."); *Bradshaw v. Hilco Receivables, LLC*, 725 F.Supp.2d 532, 536 (D.

---

[1] *Twombly* requires that a plaintiff plead sufficient facts to "state a claim of relief that is plausible on its face," 550 U.S. at 570, and while the pleadings need not contain "detailed factual allegations," they must contain must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. *Iqbal* refined the heightened pleading standard in *Twombly*, advising that "the plausibility standard is not akin to a 'probability requirement,'" and that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678.

Md. 2010).[2]  The purpose of requirements such as that is to provide the parties with "fair notice of the factual basis for an assertion contained [in] a claim or defense," and holding defendants to the same plausibility standard as plaintiffs promotes the interests of consistency and fairness. *Bradshaw*, 725 F.Supp.2d at 536.  Furthermore, filing a list of "boilerplate" affirmative defenses often requires plaintiffs to conduct additional discovery to ascertain "which defenses are truly at issue and which are merely asserted without factual basis," thereby "clutter[ing] the docket" and "creat[ing] unnecessary work."  *Safeco Ins. Co. of Am. v. O'Hara Corp.*, No. 08-CV-10545, 2008 WL 2558015, at *1 (E.D. Mich. June 25, 2008).  Thus, a mere recitation of a laundry list of affirmative defenses without any supporting detail is contrary to the requirements of the *Twombly–Iqbal* standard.

### III.

Autumn Woods has filed such a laundry list of affirmative defenses in its Answer to Barnes's Complaint.  Many of these affirmative defenses on this list are questionable on their face, such as the third affirmative defense (improper venue), the seventh affirmative defense (claims are barred by arbitration and award), and the tenth affirmative defense (claims are barred by "duress, failure of consideration, fraud, illegality, injury be [sic] fellow servant, laches, license, payment, res judicata, and the statute of limitations").  ECF No. 33 at 16–17.  Although

---

[2] Other cases from the District of Maryland are in accord.  *See, e.g.*, *Alston v. Transunion*, Case No. GJH-16-491, 2017 WL 464369, at *3 (D. Md. Feb. 1, 2017) ("This Court joins with the majority of the judges in this district in holding that the heightened pleading standard of *Iqbal* and *Twombly* applies to affirmative defenses . . . ."); *Malibu Media, LLC v. Doe*, No. RWT 13-cv-0512, 2015 WL 1402286, at *2 (D. Md. Mar. 25, 2015) ("[T]his Court has previously found that the plausibility standard set forth in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* applies as much to the pleading of affirmative defenses as it does to the pleading of allegations in a complaint.") (internal citations omitted); *Topline Solutions, Inc. v. Sandler Sys., Inc.*, Civ. No. L–09–3102, 2010 WL 2998836, at *2 (D. Md. July 27, 2010) ("[I]t would be incongruous and unfair to require a plaintiff to operate under one standard and to permit the defendant to operate under a different, less stringent standard."); *but see, e.g.*, *Baron v. Directv, LLC*, 233 F.Supp.3d 441, 444 (D. Md. 2017) (holding that "a defendant's affirmative defenses need not be pleaded according to the *Iqbal–Twombly* standard . . . It is still the undersigned's opinion, in the absence of binding precedent, that affirmative defenses need only meet the pleading standard of Rule 8(b)(1)(A)").

it is possible, none of the affirmative defenses in Autumn Woods's Answer appear likely to be supportable by corresponding factual affirmations.

Autumn Woods's boilerplate list fails to notify Barnes of the defenses Autumn Woods may make regarding her claims, quite possibly requiring Barnes to conduct additional discovery to disclose Autumn Woods's factual predicate for its defenses, causing delay in the proceedings. Therefore, the Court will require Autumn Woods to refile an Answer containing a new list of affirmative defenses—based upon careful consideration of whether it has any factual support sufficient to satisfy the heightened pleading standard of *Twombly* and *Iqbal*. The Amended Answer shall be filed within ten (10) days after the issuance of this Opinion.

In this regard, the Court invites Autumn Woods's attention to Rule 11(b)(2) of the Federal Rules of Civil Procedure, which requires attorneys to certify that all pleadings filed with the Court contain "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

**IV.**

For the foregoing reasons, Barnes's Motion to Strike Affirmative Defenses, ECF No. 36, is **GRANTED IN PART** and **DENIED IN PART**. Autumn Woods shall have ten (10) days to file an Amended Answer consistent with the Court's rulings herein.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**October 31, 2018**