## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAVONNA BARNES | Case No.: PJM 18-1473 |
| Plaintiff, | |
| v. | |
| NCC BUSINESS SERVICES, INC. et al. | |
| Defendants. | |

## PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table of Authorities ........................................................................... ii

I.   INTRODUCTION ...........................................................................1

II.  FACTUAL BACKGROUND ............................................................1

III. ARGUMENT ................................................................................ 2

A. Sun Ridge Failed to Establish Genuine Issues of Material Fact ............................. 2

i.  Sun Ridge Cannot Hide Behind Its Agent RPS .................................................. 2

ii. Sun Ridge Fails To Establish That Ms. Barnes Owed Money to Sun Ridge...... 4

B. Plaintiff is Entitled to Summary Judgment on Her MCDCA Claim and MCPA Claims against Sun Ridge................................................................................... 5

C. Plaintiff is Entitled to Summary Judgment on Her Defamation Claims.................7

i.  Plaintiff is Entitled to Summary Judgment on Liability on her Defamation Claim against Sun Ridge ...........................................................................7

ii. Plaintiff is Entitled to Summary Judgment on Liability on her Defamation Claim against NCC ....................................................................................7

    a)   Barnes' Defamation Claim Is Not Pre-Empted Because NCC Acted With Malice .............................................................................. 8

    b)   There is No Material Dispute As To The Presence of the Elements of Barnes' Defamation Claim Against NCC.............................................. 9

D.  Sun Ridge is not Entitled to Summary Judgment on Plaintiff's False Light Claim 9

E.  Plaintiff is Entitled to Summary Judgment on her Fair Credit Reporting Act Claim Against NCC 11

i.  The Record Shows That NCC Failed to Investigate Barnes' Disputes.............. 11

ii. NCC Willfully Violated the FCRA ....................................................13

F.  Barnes Suffered Harm .....................................................................15

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242,  248–49 (1986) ......................................... 2

*Berhane v. Allstate Ins. Co.,* No. CIV. PJM 13-1713, 2013 WL 5960891 (D. Md. Nov. 6, 2013).................................................................................. 5

*Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514 (4th Cir.2003) .............. 2

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ..................................................... 2

*Dalton v. Capital Associated Indus., Inc.,* 257 F.3d 409 (4th Cir. 2001).........................14

*Davenport v. SallieMae,* 124 F.Supp.3d 574 (D. Md. 2015)................................13

*Exxon Mobil Corp. v. Albright,* 433 Md. 303 (Md. App. 2013).........................................15

*Furman v. Sheppard*, 130 Md. App. 67, 744 A.2d 583 (2000) ......................................... 10

*Grant-Fletcher v. McMullen & Drury, P.A.,* 964 F.Supp.2d 514 (D. Md. 2013)...............12

*Herget v. Herget*, 319 Md. 466, 573 A. 2d 798 (1990) ........................................................ 5

### Statutes

15 U.S.C. § 1681h(e).............................................................................................. 8

Md. Code Ann., Com. Law § 14-201(b)................................................................. 6

Md. Code Ann., Com. Law § 14-201(c) ................................................................ 6

Md. Code Ann., Com. Law § 14-201(d)................................................................. 6

## I.   INTRODUCTION

Defendants have presented their respective Motions for Summary Judgment entirely lacking in substance and devoid of legal support. Both Defendants make conclusory denials and ignore Plaintiff's detailed factual foundation. Sun Ridge Associates, LP ("Sun Ridge") presents little more than conclusory denials in its Opposition, arguing instead that it cannot be liable because it hired a management company to perform many of its day-to-day tasks. Sun Ridge cited to only one case in the argument section of its Motion for Summary Judgment and no cases in its Opposition. NCC concedes that no genuine disputes of material fact exist. NCC mem. at 2, 8. NCC admits almost every relevant element of Plaintiff's claims, but now seeks to avoid liability relying on misinterpretations of Federal and State law, and conclusory factual allegations and denials. NCC's creative interpretations of the law are wrong, in most cases plainly so: NCC seeks to insert a non-existent knowledge requirement into the FCRA, misapplies the FCRA's willfulness standard and relies on FDCPA principles that are simply inapplicable.

## II.   FACTUAL BACKGROUND

It cannot be disputed that Ms. Barnes did not owe money to Sun Ridge when Sun Ridge sent her account to NCC for collections. NCC admitted this fact in its cross-motion for summary judgment. And considering Sun Ridge's contemporaneous admission in the Circuit Court for Prince George's County, and Sun Ridge's signature on a release and rescission of lease document releasing all claims against Ms. Barnes, it cannot be disputed that Sun Ridge knew that Ms. Barnes did not owe the alleged debt.

### III.    ARGUMENT

#### A.   <u>Sun Ridge Failed to Establish Genuine Issues of Material Fact</u>

A party opposing a properly supported motion for summary judgment bears the burden of establishing a genuine issue of material fact on each essential element of its case. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242,  248–49 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The party opposing summary judgment " 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003).

#### i.    *Sun Ridge Cannot Hide Behind Its Agent RPS*

Sun Ridge seems to be suffering from an identity crisis throughout its Opposition and Motion for Summary Judgment, and throughout its misconduct during the discovery phase of this litigation. First, upon receiving a FRCP 30(b)(6) deposition subpoena from the Plaintiff, Sun Ridge made the choice to produce Theresa Eastman Davis, an employee of RPS as its corporate representative. Then during Ms. Davis' deposition testimony, she could not provide relevant responses based on her assertion that she was an employee of "RPS" and therefore was not required to prepare for responses directed towards Sun Ridge. Sun Ridge agreed to sit for another 30(b)(6) deposition, where Sun Ridge decided to again produce the same  employee of RPS, Ms. Davis. The second time around, Ms. Davis provided more testimony relevant to both Sun Ridge and RPS.[1]

---

[1] Judge Day dismissed Sun Ridge's attempt to hide behind its agent during the February 29, 2019 discovery dispute teleconference, and again when he granted Plaintiff's Motion for Sanctions. ECF #75 (paperless).

In its Opposition, Sun Ridge seems to argue that it cannot be liable for Plaintiff's claims because the collection actions were actually performed by RPS. *See* Sun Ridge Opp at 6. ("... Sun Ridge submits that it was RPS that forwarded this account to NCC.") This argument fails for the same reason that Sun Ridge decided to produce an RPS employee as its designee: RPS performed the relevant actions, including collection actions, as an agent of Sun Ridge. Sun Ridge and RPS are so intertwined that, in response to a deposition notice to Sun Ridge, an RPS employee appeared to testify on Sun Ridge's behalf. But in its Opposition and Motion for Summary Judgment, without any citation to authority, Sun Ridge argues that they are not so intertwined after all, and that Sun Ridge cannot be held liable for actions that its agent does on Sun Ridge's behalf.

In fact, when opposing Plaintiff's motion, Sun Ridge frivolously asserts that "RPS is not an agent of Sun Ridge." *See* Def. Opp. at 6. Not only does that bizarre statement fly in the face of its own deposition testimony[2], Sun Ridge contradicts that statement in its Motion for Summary Judgment, which it filed on the same day of its Opposition. *See* Sun Ridge Mot. at 5 ("Similarly, Plaintiff chose not to subpoena the records and/or employees, staff, or officers of RPS, with the exception of Ms. Davis, who was only asked to testify in the capacity of RPS acting as an agent of Sun Ridge.") *See also id.* at 2 ("Richman Property Services ("RPS") is ... authorized by Sun Ridge to collect rent and otherwise manage Sun Ridge's property.") Sun Ridge also clearly stated in its Amended Responses to Interrogatories that "[t]he responses to these Interrogatories are generated with the input of Sun Ridge's attorney as well as Sun Ridge's agent, Richman Property Services, Inc." Ex.

---

[2] See Ex. 1 of Plaintiff Mot., Dep. of T. Davis at 21 ("Q. Well, okay. So, firstly, I'm not talking about rent that is paid as it is full and due. My question is this. If a tenant is behind on rent, what does Sun Ridge do about it? A. So, Sun Ridge Associates, LP does nothing. **Richman Property Services, as their [sic] agent for Sun Ridge, would be responsible for any effort to collect rent.**") (emphasis added).

23. at ¶9 After providing numerous statements, both certified and under oath, that RPS an agent of Sun Ridge, it is disingenuous at best for Sun Ridge to declare otherwise in its Summary Judgment briefing. The position is also entirely unsupported by the record. Sun Ridge's conclusory, self-contradictory allegation that RPS is not its agent cannot create a genuine issue of material fact.

Sun Ridge's own Motion for summary judgment, states that RPS is "...authorized by Sun Ridge to collect rent and otherwise manage Sun Ridge's property." Sun Ridge Mot. at 2 *quoting* Deposition Testimony of Ms. Davis. RPS's acts in this case were thus within the authority Sun Ridge gave it, and there is no material dispute of fact to avoid liability for RPS's acts.

ii.   *Sun Ridge Fails To Establish That Ms. Barnes Owed Money to Sun Ridge*

Sun Ridge alleges that Ms. Barnes "indeed owed a debt to Sun Ridge." Sun Ridge Opp. at 2. In its Motion for Summary Judgment, Sun Ridge alleges that Ms. Barnes owed Sun Ridge money "[i]n the period of time between Plaintiff's filing of a Rent Escrow action on August 25, 2016, and the court's ruling on the issue on November 4, 2016." Sun Ridge Mot. at 1. These assertions are not supported by any evidence other than the testimony of Sun Ridge's 30(b)(6).[3] Sun Ridge Opp. at 2. Plaintiff, on the other hand, supports her assertion that she owed no money with legal authority, deposition testimony, and a release signed on behalf of Sun Ridge and admissions from the parties.[4]

---

[3] Sun Ridge relies on its Exhibit 2 (ECF 89-4), at 71:11-17, but page 71 is not included in Exhibit 2
[4] The interpretation of the Rescission Agreement is a matter of law for the court, not a matter of fact. Like any other contract term, the release is objectively interpreted, and its plain meaning is that all claims were released.

4

The November 23, 2016 release, on its face, releases "all claims or demands of whatever kind of nature arising under or as a result of said lease or the occupation or letting of said premises..." MF#8 and Ex. 6 of Plaintiff's Mot. Such a release with such clear terms means what is says and clearly releases Ms. Barnes from the type of charges that Sun Ridge attempts to impute on her. It is undisputed that Ms. Barnes did not owe the alleged debt because the release, as a matter of law, estops Sun Ridge from charging Ms. Barns for the alleged damage to the apartment. Sun Ridge's baseless denial of the effectiveness of the release, without any evidence or support, cannot create an issue of material fact. *See Berhane v. Allstate Ins. Co.,* No. CIV. PJM 13-1713, 2013 WL 5960891 (D. Md. Nov. 6, 2013)( Court granted summary judgment in a case based on signing of full release); *See also Herget v. Herget*, 319 Md. 466, 473, 573 A. 2d 798, 801-02 (1990) ( rejecting "the argument that general language cannot effect a full release of a specific right, even a right that is unknown at the time the agreement was made."). Therefore, Ms. Barnes did not owe the alleged debt as a matter of law.

B. <u>Plaintiff is Entitled to Summary Judgment on Her MCDCA Claim and MCPA Claims against Sun Ridge</u>

MCDCA and MCPA Claims Against Sun Ridge in opposing Plaintiff's motion for judgment on the MCDCA claim, Sun Ridge continues its woeful attempt to shield itself from liability based on the theory that it cannot be liable for actions that its agent took on its behalf. Sun Ridge Opp. At 6. For reasons stated in Sec. A, *supra*, Sun Ridge is wrong, and it must be held accountable for the actions of its agent, RPS.

Further, Sun Ridge failed to mention in its opposition anything relating to the "failure to pay" lawsuits that it unlawfully initiated against Ms. Barnes pending the court

escrow case. *See* Plaintiff Mot. at 24-25 ("The undisputable material facts show that both Sun Ridge and NCC were attempting to collect a debt from Ms. Barnes that she in fact did not owe. A clear example of asserting a right when does not exist is when Sun Ridge filed a lawsuit for failure to pay rent after Ms. Barnes had already successfully opened a court escrow, and timely paid into the court escrow. MF 4 – 7.") These lawsuits filed by Sun Ridge clearly identified "Sun Ridge Associates LP TA AUTUMN WOODS 1" as the Landlord Plaintiff. *See* Ex. 4 to Plaintiff Mot. Therefore, in addition to the actions taken by RPS on behalf of Sun Ridge, there is clear evidence in the record of Sun Ridge taking unlawful collection actions in its own name.

Sun Ridge also argues that the Plaintiff cannot prove that Sun Ridge is a "collector" under the MCDCA based on its theory that RPS is the entity that did the collecting. As explained in the preceding paragraph, Sun Ridge took collection actions against Ms. Barnes in its own name in Maryland Courts. Sun Ridge is clearly "a person[5] collecting or attempting to collect an alleged debt arising out of a consumer transaction[6]." Md. Code Ann., Com. Law § 14-201(b).

Finally, Sun Ridge argues that there is a dispute of material fact as to whether Ms. Barnes actually owed the relevant debt to Sun Ridge. As stated *supra* in Sec. III.A.ii, there is documentary evidence that Ms. Barnes did not owe the disputed debt, and both parties have already admitted that she did not owe the debt.[7]

---

[5] "Person" includes an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity. Md. Code Ann., Com. Law § 14-201(d).

[6] "Consumer transaction" means any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes. Md. Code Ann., Com. Law § 14-201(c).

[7] *See* MF#21 of Plaintiff's Motion at 6.

Ms. Barnes' MCPA claim is derivative of her MCDCA claim, and therefore, the Defendants are liable for MCPA violations when they are found liable for MCDCA violations.

C. <u>Plaintiff is Entitled to Summary Judgment on Her Defamation Claims</u>

    i. *Plaintiff is Entitled to Summary Judgment on Liability on her Defamation Claim against Sun Ridge*

Sun Ridge's defense to Plaintiff's Defamation claim hinges on its argument that Ms. Barnes does in fact owe money to Sun Ridge. *See* Sun Ridge Mot. at 8. As addressed *supra* in Sec. III.A.ii., it is beyond dispute that Ms. Barnes did not owe that disputed debt. In addition, Sun Ridge itself appears to concede that, after November 4, 2016, Ms. Barnes did not owe any money. However, Sun Ridge claimed that Ms. Barnes did in fact owe money. Its records show that it continued to send her account to collection until immediately before Sun Ridge's own second deposition.[8]

Sun Ridge's only other defense to the defamation claim is its assertion that Ms. Barnes was not harmed. As Sun Ridge's mere denial is unsupported by any evidence in the record, it creates no genuine dispute of material fact.

    ii. *Plaintiff is Entitled to Summary Judgment on Liability on her Defamation Claim against NCC*

NCC argues that Barnes' defamation claim is barred by its qualified immunity under the FCRA, and that none of the elements of a defamation claim are present. NCC's

---

[8] See Exhibit 8 ("Resident information has been extracted and sent to collections."); See also Ex. 9 of Plaintiff's Mot. at 43:5 – 46:16.

first argument fails because the record shows that NCC acted with malice, and its second argument is presented in purely conclusory terms.

a) Barnes' Defamation Claim Is Not Pre-Empted Because NCC Acted With Malice

NCC argues that 15 U.S.C. § 1681h(e) bars Plaintiff's defamation claim. NCC Mem. at 20. As NCC correctly recognizes, this defense is not available if NCC acted with malice. NCC asserts – again in a conclusory manner – that was no malice.

NCC agrees that "serious doubts as to the truth" of the information or "a high degree of awareness of the probably falsity" of the information would constitute malice in the relevant sense. NCC Mem. at 21. That malice existed is shown by the undisputed facts. First, NCC's own employee believed that there was such serious doubt, or that falsity was so likely, that he wrote Barnes had "SUBMITTED DOCS SHOWING THEY DON'T . . . OWE." in NCC's log. ECF 82-11 at NCC 2. Second, NCC does not dispute that the papers it did receive showed – at the least – that the amount NCC reported was not owed:  state court's rent escrow order expressly stated, for example, that November's rent was not owed at all, yet November's rent was part of the amount NCC was reporting. *compare* ECF 82-11 (NCC's log) at NCC 1 *with* ECF 82-5 (state court order).  Third, with papers in its hands showing that *some* of the debt was not owed, NCC had "obvious reasons to distrust the accuracy of" the rest of the alleged debt.

Thus, after Plaintiff disputed the debt, NCC acted with malice in continuing to report the false debt.

b) <u>There is No Material Dispute As To The Presence of the Elements of Barnes'</u>
<u>Defamation Claim Against NCC</u>

NCC vaguely, and again without citation to the record, of any substantive discussion, denies the presence of all of the elements of defamation. Since NCC makes no actual argument about these elements, Plaintiff will simply refer to her Motion for Summary Judgment. P's Mot at 25. The only additional point to note is that, since NCC acted with malice, proof of special harm is unnecessary to prevail on Plaintiff's defamation claim against NCC.

D. <u>Sun Ridge is not Entitled to Summary Judgment on Plaintiff's False Light</u>
<u>Claim</u>

Sun Ridge contends that Plaintiff cannot prevail on her False Light claim because 1) Plaintiff in fact owed a debt to Sun Ridge, 2) Sun Ridge did not know the debt that was reported to NCC was incorrect, and 3) Sun Ridge did not know that any such statement would place Plaintiff in a false light.

First, as explained in Sec. III.A.ii, Ms. Barnes did not owe the debt that Sun Ridge reported to NCC. Second, Sun Ridge had to have known that the debt that it reported was incorrect because the evidence shows that Sun Ridge knew that Ms. Barnes opened a lawful rent escrow case, paid the required rent payments into escrow, and the parties signed a release upon her move-out. If Sun Ridge did not have actual knowledge, Ms. Barnes can show the fact finder evidence that Sun Ridge at least recklessly disregarded the fact that Ms. Barnes did not owe Sun Ridge Money.

The False Light tort is defined in Maryland as the following:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Furman v. Sheppard*, 130 Md. App. 67, 77, 744 A.2d 583, 587 (2000). Sun Ridge in its motion for summary judgment alleges that the Plaintiff cannot prove her false light claim, however, Sun Ridge failed to produce any evidence supporting that argument. Rather, Sun Ridge repeated its demonstrably false argument that the Plaintiff owed Sun Ridge money.

Sun Ridge also states that the Plaintiff cannot prove that Sun Ridge had knowledge that the debt was incorrect, and as support, only states that the "Plaintiff has offered no evidence that Sun Ridge intended to pursue a debt against Plaintiff while having knowledge that no debt existed." Sun Ridge Mot. at 7-8. The Plaintiff did not move for summary judgment on her False Light claim, however, the Plaintiff submitted sufficient evidence for her other claims to overcome Sun Ridge's summary judgment motion against her False Light claim. Sun Ridge knew that Ms. Barnes did not owe the money it reported to NCC, as Sun Ridge was a party to the rent escrow case with Ms. Barnes. Further, Sun Ridge, through its agent, signed the release of liability which establishes that Ms. Barnes did not owe the debt as a matter of law. If Sun Ridge had no actual knowledge of these facts, then it recklessly disregarded those facts at the very least. As Sun Ridge set forth in its motion, the Plaintiff needs to meet the "reckless disregard" standard of knowledge to prevail on her False Light claim. Sun Ridge Mot. at 7.

E. <u>Plaintiff is Entitled to Summary Judgment on her Fair Credit Reporting Act Claim Against NCC</u>

i.   *The Record Shows That NCC Failed to Investigate Barnes' Disputes*

NCC concedes that the law requires furnishers such as NCC to investigate disputes they received. NCC Mem. at 10. NCC concedes that it furnished information to the three CRAs, Experian, Trans Union and Equifax. *Id.* NCC concedes that it received dispute through the CRAs. *Id.* NCC even admits that the information it furnished was inaccurate. *Id.*

The language in which NCC defends its investigation of Barnes' disputes is telling: it says that it "conduct[ed] a reasonable investigation *of its records*" NCC Mem. at 11 (emph. Added). NCC points only to its interrogatory responses (ECF 82-13); its collection log (ECF 82-11) and the deposition of its president, Mr. Pollan, re-verifying NCC's interrogatory answers. NCC Mem. at 12. NCC's entire factual evidence of its investigation consists of the phrase:

> NCC investigated Plaintiff's disputes by pulling the Account History for Plaintiff's account, reviewing the notes therein and cross-referencing those notes with the documentation in NCC's possession.

ECF 82-11, ans. to interrogatory 6. But what does this rather opaque phrase mean? The evidence in the record explains, in detail, what NCC's policies were. Ms. Fiscus, who actually handled some of Ms. Barnes disputes, testified to what she does. What Ms. Fiscus does and what NCC's policies require is much simpler than this phrase suggests: the account is "reviewed" only sufficient to fill in the ACDV response and the facts of the dispute and any documents sent with the dispute are saved into NCC's computer system. That is all that is done before NCC responds to the dispute.

11

NCC concedes the accuracy of Barnes' description of its policies in her Memorandum in Support. See NCC Mem. at 14-15. NCC claims, however, that there is testimony that NCC "has procedures in place in order for dispute to be processed correctly and documents reviewed." The "procedures" NCC points to do not amount to an FCRA investigation, but rather deal with other matters such as  validation of debt letters (Fiscus Depo, at 18:10-23); restrictions on phone calls and letters (Fiscus Depo. At 20:16-24) or do not materially add to the "investigation" NCC conducted (e.g. Fiscus Depo. At 26:17-28:11 (describing the general layout of an ACDV); 32:24-33:10 (stating that Fiscus *could see* NCC's account notes). These contributions are so insubstantial that even NCC does not bother to describe them or explain their relevance in its memorandum. NCC Mem. at 15. The record shows that NCC's "investigation" was entirely superficial.

NCC's reliance on *Grant-Fletcher v. McMullen & Drury, P.A.,* 964 F.Supp.2d 514, 529 (D. Md. 2013) is misplaced. *Grant-Fletcher* is an FDCPA case. NCC quotes the court explaining that misrepresentations by a collector in reliance on its client's faulty information are "bona fide errors" under FDCPA. NCC mem. at 11. NCC quotes only part of the relevant phrase from *Grant-Fletcher*. The complete phrase is "the debt collector is entitled to rely on its client's representation that the debt is valid, *and is not obliged to engage in an independent investigation of the debt.*" *Grant-Fletcher* does not protect NCC here because the FCRA *expressly requires* an investigation of the debt by NCC. Here, NCC did not merely rely on its client's initial placement in sending out a debt collection letter, without knowledge of any dispute. NCC received a dispute, and chose to conduct a superficial investigation, preventing itself from learning anything that might cast doubt

on the validity of the debt. As it turns out, a reasonable investigation would have revealed what NCC now concedes: that no debt was owed.

Instead of explaining how its investigation meets the *Johnson* standard for a reasonable investigation, NCC attempts to hold Barnes to a legally insupportable standard on her FCRA claim. NCC says that there is "no evidence . . . that NCC had knowledge of [the Rescission Agreement which it concedes shows the invalidity of the debt]". Knowledge of the invalidity of the debt is not an element of an § 1681s-2(b) claim and Plaintiff is not required to prove it.

     *ii.*   *NCC Willfully Violated the FCRA*

NCC contends that it did not willfully violate the FCRA, and again focuses on its lack of knowledge of the Rescission Agreement. Again, its focus is misplaced. NCC's violation of the FCRA was that it failed to conduct a reasonable investigation of Barnes' disputes. Thus, the willfulness Barnes must prove is not *willfulness in reporting a false debt*, but willfulness in *failing to investigate*. NCC's arguments that Barnes has failed to show that NCC knew the debt to be invalid are therefore irrelevant to Barnes' willful violation claim.

NCC's only other argument is that NCC's procedures merely "could be improved" or its employees "did not follow the procedures" and that  it is like the negligent student loan servicer in *Davenport v. SallieMae,* 124 F.Supp.3d 574, 584 (D. Md. 2015). However, NCC is little like the servicer in *Davenport*. As this court explained:

> it is apparent that Navient's proverbial left hand did not know what its proverbial right hand was doing . . . To be sure, Navient's process for reviewing payment disputes, one where it does not even review its own correspondence with a customer, is also wanting. But this is a far cry from the level of

> knowing and intelligent commission of acts in conscious
> disregard for the rights of its customers.

124 F.Supp.3d at 584. NCC is not an organization on Navient's scale. This is not a case of different departments of a national company becoming confused. NCC knew that it had an obligation to investigate. It knew that failure to do so could result in harm to consumers. Nevertheless, its policies were such that even the employees charged with carrying them out did not realize that they were "investigating" and apparently never correct the amount of a debt that is disputed. ECF 82-21, Deposition of Fiscus, 22:19-23 ("Q: When you receive a dispute, do you perform an investigation to determine whether or not the credit reporting is accurate? . . . A: Not to my knowledge"); 25:8-11 ("Q: Do you ever respond to a dispute by, for instance, lowering the amount that NCC is reporting is due? A: No.")

NCC's conceded "mistakes" have no bearing on its willful failure to investigate. The failure to forward Barnes disputes to Sun Ridge *in accordance with NCC's policy* made no difference, because disputes were only to be forwarded *after* NCC had already sent its response to a dispute to the CRAs (i.e. when the violation had already occurred). NCC's additional mistakes do not mean that it was merely negligent in maintaining a policy not to investigate FCRA disputes.

Finally, NCC implies that Barnes must prove that NCC failed to investigate "with the goal of harming Plaintiff". However, as the 4th Circuit has explained "[a] showing of malice or evil motive is not required to prove willfulness under the Act" *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). Instead, Barnes must prove that NCC "'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer." *Id*. This, Barnes has shown: NCC knew it had a duty to

14

investigate and that harm might result if it did not investigate. Its policies did not provide

for an investigation, and even its own staff did not believe that what they were instructed

to do was an "investigation."

     F.  <u>Barnes Suffered Harm</u>

NCC and Sun Ridge both assert that Barnes suffered no harm by their conduct, as

a defense to each of Barnes' claims. To prevail on liability, Barnes need only show that she

suffered *some* harm.

Barnes testified, and neither Defendant genuinely disputes, that she suffered

physical manifestations of emotional distress, including sleeplessness and loss of

appetite. She testified that these manifestations were triggered by NCC's false reporting

of the Sun Ridge debt. MF#53 of P's Mot. It is not the case that there is no causal

connection between Defendants' actions and Barnes' injuries. Nor does Barnes need

expert testimony to prove a causal connection, since:

> claims for emotional distress need not be supported
> necessarily by expert medical testimony to establish injury
> and causation where 'the causal connection is clearly apparent
> from the illness itself and the circumstances surrounding it,
> or where the cause of the injury relates to matters of common
> experience, knowledge, or observation of laymen.'

*Exxon Mobil Corp. v. Albright*, 433 Md. 303, 368 (Ct. App. 2013). Only in difficult

cases, such as *Albright* which involving distress from a fear of an alleged increased risk of

cancer, is expert testimony necessary. The causal connection between the false reporting

of a debt and Plaintiffs' sudden and significant sleeplessness and loss of appetite is

apparent.

Ms. Barnes' history of conflict with Sun Ridge and her previous court appearances

do not undermine Defendants' actions as the cause of her distress, but rather explain it:

having fought so hard to uphold her rights against her landlord, Sun Ridge, it would surprise no-one that Ms. Barnes was very upset when the same Landlord hired NCC to collect the debt, and NCC began make false reports at the behest of the same landlord. It is equally intuitive that NCC's refusal to correct its false reporting, even after Sun Ridge had agreed in state court that the reporting *should* be corrected, would cause emotional distress. To the extent that there is doubt about the contribution of other factors to Ms. Barnes' distress, that is properly a matter for a jury.

Nor does Ms. Barnes history of medical and credit problems mean that she cannot have been damaged by NCC. Ms. Barnes' testimony was forthright about which problems were caused by these defendants and which were not. Ms. Barnes explained why the false debt, rather than other legitimate debts, was distressing to her.[9]

By:                                    */s/ Ingmar Goldson*

                           Ingmar Goldson
                           igoldson@goldsonlawoffice.com
                           THE GOLDSON LAW OFFICE
                           1734 Elton Road, Suite 210
                           Silver Spring, MD 20903
                           Tel.    (240) 780-8829

                           Emanwel J. Turnbull
                           Fed. Bar No. 19674
                           The Holland Law Firm, P.C.
                           P.O. Box 6268
                           Annapolis, MD 21401
                           Telephone: (410) 280-6133
                           Facsimile: (410) 280-8650
                           eturnbull@hollandlawfirm.com

---

[9] *See* MF#53  and Ex. 3 at 155:3-8 ("Q Do you currently have any stress about your credit report? A No, because I am getting things taken care of to get things removed from it. So no. Q It's an ongoing process? A Yes.") *See also id.* at 108:11 – 111:4 (Plaintiff described emotional distress in detail, including emotional response to seeing the NCC line on her credit report).

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing paper was served on Defendants' counsel when filed through the CM/ECF system on August 5, 2019,

*/s/ Ingmar Goldson*

Ingmar Goldson